IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TESSANA LEWIS, } | |
| } | |
| Plaintiff, } | |
| } | CIVIL ACTION NO. |
| v. } | 04-AR-2355-S |
| } | |
| COVENANT CLASSICAL SCHOOL OF } | |
| TRACE CROSSING, LLC, } | |
| } | |
| Defendant. } | |

**<u>MEMORANDUM OPINION</u>**

In this case Tessana Lewis ("Lewis") sued her former employer, Covenant Classical School of Trace Crossing, LLC ("Covenant"), claiming that she was discharged because of her pregnancy in violation of the Pregnancy Discrimination Act ("PDA"), an amendment to the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. Lewis was terminated on her third day of employment after Covenant learned that she was pregnant and unmarried. Covenant holds itself out as a Christian daycare and kindergarten. It had express written policies by which its employees were required to subscribe to Covenant's code of conduct. These materials mentioned the Bible as the primary source of instruction on matters of morality, but did not expressly mention extramarital sexual intercourse as proscribed conduct that would automatically result in termination.

After hearing four days of evidence, the jury answered "Yes" to the first question put to it, namely: "Do you find from a preponderance of the evidence that plaintiff's pregnancy was a

motivating factor in defendant's decision to discharge her?". It was the jury's answers to questions numbered 2 through 7 that, despite plaintiff's pregnancy being a factor that motivated Covenant's decision, determine that Covenant did not violate the PDA. These questions, and the jury's answers to them, are as follows:

> 2. ONLY IF you have answered "YES" to question no. 1, do you find from a preponderance of the evidence that the real or overriding reason for plaintiff's discharge was not plaintiff's pregnancy, but rather was defendant's belief that plaintiff had not adhered to a code of morality expected by defendant of its employees?
>
>      YES   X      NO  _____
>
> 3. ONLY IF you have answered "YES" to question no. 1, do you find from a preponderance of the evidence that defendant would have discharged plaintiff for engaging in sexual activity outside of marriage if it had known of such extramarital sexual activity, without regard to whether or not the extramarital sexual activity resulted in pregnancy?
>
>      YES   X      NO  _____
>
> 4. ONLY IF you have answered "YES" to question no. 1, do you find from a preponderance of the evidence that defendant was a religious corporation or educational institution that employed only individuals who subscribed to defendant's particular belief system?
>
>      YES   X      NO  _____
>
> 5. ONLY IF you have answered "YES" to question no. 4, do you find from a preponderance of the evidence that plaintiff did not subscribe to defendant's belief system at the time of her discharge?
>
>      YES   X      NO  _____
>
> 6. ONLY IF you have answered "YES" to question no. 1, do you find from a preponderance of the evidence that

defendant was an educational institution or institution of learning that was, in whole or in substantial part, owned, supported, controlled or managed by a particular religion or by a particular religious corporation, association or society, or that the curriculum of defendant was directed toward the propagation of a particular religion and that defendant had an employment practice of hiring employees only if their religion conformed to defendant's particular religious beliefs?

    YES   X           NO        

7.  ONLY IF you have answered "YES" to question no. 6, was defendant's decision to discharge plaintiff made for the purpose of implementing defendant's said employment policy?

    YES   X           NO        

The court has no quarrel with the conclusion reached by the jury that Lewis's pregnancy played a part in the decision to terminate her.  It was clearly the pregnancy that alerted Covenant to the fact that Lewis had engaged in sexual activity outside of marriage.  It would have been difficult, if not impossible, for the jury to have answered otherwise.  Its answer was certainly consistent with what this very court held in a non-jury pregnancy discrimination case decided before Title VII was amended to guarantee trial by jury.  This court said in *Hargett v. Delta Automotive, Inc.*, 765 F.Supp. 1487 (N.D. Ala. 1991):

> The traditional *McDonald-Burdine* formula breaks down when one attempts to apply it to a pregnancy termination case in which the Pregnancy Discrimination Act provides that any adverse action based on an employee's pregnancy constitutes a *per se* violation, whether plaintiff is replaced or not.  *Hayes v. Shelby Memorial Hosp.*, 546 F.Supp. 259 (N.D. Ala. 1982), *aff'd* 726 F.2d 1543, *rehearing den'd*, 732 F.2d 944 (11th Cir. 1984).  In other words, if pregnancy plays any role whatsoever in the

>     adverse employment decision, the legislative intent was
>     to prevent it.

*Id.* at 1493.

In *Hargett* a pregnant unmarried female had been fired by her employer.  This court did not allow the employer to articulate as a legitimate nondiscriminatory reason for the termination that it had a rule requiring female employees to be "ladylike".  This court decided that such could not be recognized as a *bona fide* occupational qualification in the context of that particular employment relationship.  There is, however, an obvious distinction between what constitutes a legitimate reason for an ordinary business enterprise to make such an adverse employment decision in today's Title VII world, and what is appropriate for an employer which enjoys the protection of the First Amendment's freedom of religious exercise, something that Congress expressly recognizes for those employers which are religious enterprises and which sincerely insist on inherence to their religious precepts, such as refraining from extramarital sexual intercourse.

    Exploiting the argument that this court articulated in *Hargett*, Lewis moved for judgment as a matter of law on the question of liability, arguing that the only reason articulated by covenant is not a legitimate nondiscriminatory reason.  Lewis has consistently contended that unless Covenant can articulate a reason for the termination that has no connection with Lewis's pregnancy, she is entitled to a verdict.  The court would agree with Lewis but

4

for the statutory escape routes referred to above and that specifically exempt employers which are *bona fide* religious organizations under certain circumstances. The two pertinent statutory provisions are as follows:

> This subchapter shall not apply to . . . a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. §2000e-1(a).

and

> Notwithstanding any other provision of this subchapter . . . it shall not be an unlawful employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university, or other educational institution or institution of learning is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of such school, college, university, or other educational institution or institution of learning is directed toward a propagation of a particular religion.

42 U.S.C. §2000e-2(e).

Because of these statutes, ample evidence existed upon which the jury could answer questions numbered 2 through 7 as it did. The questions tracked these statutory provisions.

Ostensibly not understanding that their answers to questions numbered 2 through 7 precluded the awarding of any damages to Lewis, the jury purported to award her compensatory damages of $600 for back wages and $15,000 for mental anguish, and no punitive

damages.  Whatever may have occasioned this non-sequitur, it does not subtract from the clear jury findings in favor of Covenant on dispositive questions of material fact.

A separate judgment consistent with this opinion will be entered.

DONE this 14th day of February, 2006.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE